UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BEVERLY ABBOTT-DAVIS,

      Plaintiff,

v.                                 Case No. 8:19-cv-2819-TPB-CPT

THE UNITED STATES,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

Before me on referral are Defendant United States's *Motion for Summary Judgment* (Doc. 20), Plaintiff Beverly Abbott-Davis's response in opposition (Doc. 22), and the government's reply (Doc. 23). I heard oral argument on the matter on February 15, 2022. For the reasons set forth below, I respectfully recommend that the government's motion be denied.

I.[1]

This premises-liability action stems from Abbott-Davis's visit to the James A. Haley Veterans Hospital in Tampa, Florida on Sunday, June 11, 2017. (Doc. 20-2 at 20, 105–06, 108–09, 210). The purpose of Abbott-Davis's visit was to see her brother-

_____

[1] The facts set forth herein are based upon a review of the evidence viewed in the light most favorable to Abbott-Davis.

in-law, who was then a patient at the hospital.  *Id.* at 20.  Abbott-Davis was accompanied on the visit by her husband, Darrel Davis, Sr., and her stepson, Darrel Davis, Jr. *Id.*  The weather that day was sunny, and the hospital's pathways were dry. *Id.* at 23.

Abbott-Davis and her family left the hospital in the early evening hours while it was still daylight.  *Id.*  To get to their parked vehicles, they proceeded along one of the concrete sidewalks on the property, which the hospital's groundskeepers cleared of debris each morning, except on the weekends.[2]  *Id.* at 22; (Doc. 22-2 at 16–17).

---

[2] The only evidence touching upon the extent to which the hospital's sidewalks were cleared on the weekends appears to be the deposition testimony of the hospital's supervising groundskeeper at the time of the accident, Douglas Simpson. (Doc. 22-2).  During his deposition, Simpson engaged in the following exchange with Plaintiff's counsel:

> Q.      [H]ow often was it scheduled that an employee of . . . the Grounds Department was to, basically, inspect the walkway areas?
> A.      So, *Monday through Friday* in the mornings the crews would go out . . . and blow off walkways and all the driveways and stuff like that.  And this was on that daily schedule *Monday through Friday*.  So, every day . . .
> Q.      When you say blow off the walkway . . .
> A.      . . . *except Saturdays*.

(Doc. 22-2 at 16–17) (emphasis added).

Simpson's testimony could be fairly interpreted to mean that the pathways were only cleaned Monday through Friday, as Simpson twice stated, or it could be read to mean that they were cleared on Sunday as well.  The problem with the latter construction is that Simpson did not affirmatively assert in this exchange that his staff cleared the sidewalks on Sundays.

To compound the lack of clarity on the issue, Simpson later testified that "[t]here was a point in time where we had a permanent weekend crew" but then indicated that this crew worked only "sporadic[ally]."  *Id.* at 20.  Simpson also could not recall the time periods when the weekend crew was in operation or whether any groundskeepers worked on the day—a Sunday—when Abbott-Davis fell.  *Id.*  Construing Simpson's testimony in the light most favorable to Abbott-Davis, a factfinder could reasonably conclude that, during the relevant time frame, the hospital was only clearing the sidewalks Monday thru Friday and not on the weekends.

Abbott-Davis was wearing six- to eight-inch wedge heels at the time.  (Doc. 20-2 at 24).

As Abbott-Davis was walking on the sidewalk, she stepped on "something," causing her leg to "buckle" and her body to fall.  *Id.* at 20.  The area of the pathway where Abbott-Davis tumbled was bordered on either side by mounded landscaped beds, which contained loose decorative rocks but no apparent physical barrier or edging to separate the rocks from the walkway.  *Id.* at 110; (Doc. 22-2 at 13, 14, 17).  According to Abbott-Davis, she saw two "small"-size rocks and one "normal"-size rock on the sidewalk after she fell.  (Doc. 20-2 at 26).  She estimated that "[o]ne was a little smaller than [a] quarter[, o]ne was about the size of a quarter or a little bigger[, a]nd one was the size of a half dollar or a little bigger."  *Id.* at 27.  All three rocks were brown or orange-brown in color.  *Id.* at 26, 138.

Abbott-Davis's husband witnessed the accident and testified that he saw his wife's foot "slipping" or "sliding on something" immediately before she hit the ground.  *Id.* at 138–140.  He attributed her spill to one "main rock" among "quite a few" rocks or pebbles that were present on the pathway.  *Id.* at 137–140.  After the fall, Abbott-Davis's husband and stepson located the rock on the walkway within a short distance of Abbott-Davis and approximated its size to be anywhere between that of a half-dollar and a golf ball.  *Id.* at 138–39, 212–13.  The hospital's supervising groundskeeper, Simpson, as well as the hospital police officer, Hector Velez, who

investigated the incident acknowledged that they had seen decorative rocks on the sidewalk on prior occasions.   (Docs. 22-2 at 18; 22-3 at 26).   Simpson and Velez maintained, however, that they were not aware of any previous slip-and-fall accidents caused by such rocks during their respective tenures at the hospital.  (Doc. 20-2 at 275, 285).

Claiming that she "suffered serious physical and emotional injuries" as a result of her fall (Doc. 22 at 1), Abbott-Davis initiated this action in November 2019 pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 (FTCA) (Docs. 1, 8).[3]  In her operative complaint, Abbott-Davis alleges a single count of negligence and seeks $15,000 in damages.  *Id.*  In its answer, the government denies any wrongdoing and asserts several affirmative defenses.  (Doc. 9).

Following the close of discovery, the government filed the instant motion for summary judgment, arguing that Abbott-Davis cannot establish a *prima facie* case of negligence.  (Doc. 20).  Abbott-Davis countered in her response that the government's summary judgment motion should be denied because genuine issues of material fact exist with respect to her negligence claim.  (Doc. 22).  After careful review of the parties' submissions and with the benefit of oral argument, the matter is now ripe for the Court's resolution.

---

[3] Abbott-Davis initially named both the United States and the United States Department of Veterans Affairs (VA) as Defendants but later dropped the VA as a Defendant.  (Docs. 1, 8).

II.

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

If a moving party makes the requisite showing, the non-movant must then designate specific facts (by her own affidavits, depositions, answers to interrogatories, and/or admissions on file) evidencing that there is a contested question of material fact for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). To do so, the non-movant must rely on more than conclusory statements and unsubstantiated allegations. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.") (citations omitted). If a party fails to properly buttress "an assertion of fact or fails to properly address another party's assertion of fact," the court may "grant summary judgment if the motion and supporting materials—including the facts

5

considered undisputed—show that the movant is entitled to" the sought-after relief.

Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-movant. *Welding Servs.*, 509 F.3d at 1356. That is, it must credit the evidence tendered by the non-movant and draw all justifiable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). In doing so, the court may not "weigh conflicting evidence or make credibility determinations" regarding a party or its presentation of the facts. *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016) (citations omitted).

III.

In an FTCA action, the law of the state where the act or omission occurred is controlling. *Gonzalez-Jiminez De Ruiz v. U.S.*, 378 F.3d 1229, 1230 n.1 (11th Cir. 2004) (noting that, in an FTCA case, "the 'whole law of the State where the act or omission occurred[,]' including its choice of law rules," applies) (quoting *Richards v. United States*, 369 U.S. 1, 11 (1962)). Because Abbott-Davis's accident transpired in Florida, the substantive law of Florida applies here. *Id.* (observing that, "[u]nder Florida's choice of law provisions, Florida law governs all substantive issues"); *Mokris v. United States*, 2021 WL 6135191, at *6 n.3 (M.D. Fla. Dec. 29, 2021) (same).

Under Florida law, a plaintiff seeking to prevail on a negligence claim must show: 1) the defendant had a duty "to conform to a certain standard of conduct;" 2)

the defendant breached that duty; 3) there is a causal connection between the defendant's breach and the plaintiff's injury; and 4) the plaintiff suffered a loss or damages as a result of the defendant's breach. *Reyes v. BJ's Restaurants, Inc.*, 774 F. App'x 514, 518 (11th Cir. 2019) (per curiam) (citing *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)); *Vallot v. Logan's Roadhouse, Inc.*, 567 F. App'x 723, 735 (11th Cir. 2014) (per curiam) (citing *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1089 (Fla. Dist. Ct. App. 2011)).[4]

The government originally maintained in its motion that Abbott-Davis cannot satisfy the second and third elements (i.e., breach of duty and causation) (Doc. 20 at 1–2) but conceded at oral argument that genuine issues of material fact exist with respect to the causation requirement.[5]  I therefore turn to the government's breach of duty argument.

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

[5] The crux of the government's causation argument was that, despite the presence of the decorative rocks on the sidewalk, Abbott-Davis could not specifically identify them as the reason for her fall. *See*, *e.g.*, (Doc. 20 at 1; Doc. 23 at 5).  In support of this contention, the government largely relied on three cases—*Reyes*, *Williams v. Sears, Roebuck & Co.*, 866 So. 2d 122 (Fla. Dist. Ct. App. 2004), and *Delgado*. *See* (Doc. 20 at 10–12).  As I discussed with government counsel at oral argument, however, none of these decisions actually buttressed the government's position.  Indeed, *Williams*, in particular, fatally undermined it.  866 So. 2d at 123 (stating that "it is not necessary that [a plaintiff] identify with any specificity the nature of the substance [on the floor] that caused her to fall," and that a plaintiff "should not be denied her day in court unless it is conclusively proven that there was *no* substance on the floor that was the proximate cause of her injuries") (emphasis added and citation omitted).

Florida common law has historically recognized three separate legal categories for persons entering onto a premises: invitee, licensee, and trespasser. *Seaberg v. Steak N' Shake Operations, Inc.*, 154 F. Supp. 3d 1294, 1299 (M.D. Fla. 2015). It is uncontested here that Abbott-Davis was an invitee at the time of the incident. (Doc. 20 at 9) (government stating that Abbott-Davis "was an invitee at the VA hospital on June 11, 2017").

A property owner owes two duties to an invitee: 1) "the duty to warn of dangers of which the owner has or should have knowledge and which are unknown to the invitee and cannot be discovered by the invitee through the exercise of reasonable care;" and 2) "the duty to use reasonable care in maintaining the property in a reasonably safe condition." *Pratus v. Marzucco's Constr. & Coatings, Inc.*, 310 So. 3d 146, 149 (Fla. Dist. Ct. App. 2021) (internal quotation marks and citation omitted); *see also Seaberg*, 154 F. Supp. 3d at 1299–3000 (same) (citing *Krol v. City of Orlando*, 778 So. 2d 490 (Fla. Dist. Ct. App. 2001)). These two duties are distinct. *Wolford v. Ostenbridge*, 861 So. 2d 455, 456 (Fla. Dist. Ct. App. 2003).

As to the first duty, the government posits that it had no obligation to warn Abbott-Davis about the decorative rocks because the rocks purportedly constituted an open and obvious condition as a matter of law. (Doc. 20 at 12). This argument is predicated upon the principle that a property owner ordinarily does not have an "obligation to protect [an] invitee against dangers which are known to [the invitee], or

which are so obvious and apparent that [s]he may reasonably be expected to discover them." *Greene v. Twistee Treat USA, LLC*, 302 So. 3d 481, 483 (Fla. Dist. Ct. App. 2020) (internal quotation marks and citation omitted).   In determining whether a condition falls within the ambit of the "open and obvious" doctrine, a court must consider the condition itself, as well as the existing circumstances surrounding the accident.  *Plott v. NCL Am., LLC*, 786 F. App'x 199, 203 (11th Cir. 2019) (per curiam) (citations omitted); *Conrad v. Boat House of Cape Coral, LLC*, 2021 WL 5980703, at *3 (Fla. Dist. Ct. App. Dec. 17, 2021) (citation omitted).

The government's reliance on the open and obvious doctrine in support of its summary judgment motion does not survive scrunty.  To begin, the operative inquiry under this doctrine is not, as the government suggests,[6] whether the object in question can be easily observed but whether the "dangerous condition of the object" is readily apparent to a reasonable person.  *Conrad, LLC*, 2021 WL 5980703, at *3 (internal quotation marks, citation, and emphasis omitted); *see also Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018) (per curiam) ("[T]he fact that the puddle of soap was capable of being observed does not necessarily make it open and obvious to a reasonable person."); *Pratus*, 310 So. 3d at 149 ("The test for application of the [open and obvious] doctrine is not whether the object is obvious, but

---

[6] (Docs. 20 at 1–2, 15–18; 23 at 6).

*whether the dangerous condition of the object is obvious*.") (internal quotation marks and citation omitted).

Further, courts have been "hesitat[ant] to absolve a property owner of liability on an 'open and obvious' theory unless the crystalized and undisputed facts establish, as a matter of law, that a plaintiff knowingly undertook an open and obvious risk for which no warning [was] necessary." *Collias ex rel. Collias v. Gateway Acad. of Walton Cnty., Inc.*, 313 So. 3d 163, 165–66 (Fla. Dist. Ct. App. 2021). Here, viewing the evidence in the light most favorable to Abbott-Davis, there is a genuine issue of material fact as to whether a reasonable person would notice a few small rocks strewn haphazardly on a walkway in the first instance, much less be alerted to the peril they pose. Courts in Florida and elsewhere faced with similar situations have reached the same conclusion. *See, e.g.*, *Santos v. Home Depot U.S.A., Inc.*, 2016 WL 4923156, at *1 (S.D. Fla. Jan. 5, 2016) (denying summary judgment, in part, because there was a genuine issue of material fact as to whether rocks, soil, and an orange ball in a store's garden department constituted an open and obvious condition); *Smith v. Callaway Bank*, 359 S.W.3d 545, 548–49 (Mo. App. 2012) (finding that a coin-sized lava rock on a sidewalk on which the plaintiff slipped was not, as a matter of law, a condition so open and obvious that the plaintiff could be reasonably expected to discover it); *Verge v. U.S. Postal Service*, 965 F. Supp. 112, 118 (D. Mass. 1996) (deciding that there

10

was a genuine issue of material fact as to whether gravel on a stairway was open and obvious even though the plaintiff knew about the rocks).[7]

Even were the Court to determine that the decorative rocks constituted an open and obvious condition, it would still have to address the hospital's second duty owed to Abbott-Davis as an invitee—namely, the duty to use reasonable care in maintaining its sidewalks in a reasonably safe condition. *Bunch v. Carnival Corp.*, 825 F. App'x 713, 718 n.7 (11th Cir. 2020) (per curiam) (noting that, although an open and obvious condition can "negate[ ] liability for failure to warn[,]" it does not relieve the owner of its duty to maintain) (citing *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1267 (11th Cir. 2020)); *Ramsey v. Home Depot U.S.A., Inc.*, 124 So. 3d 415, 418 (Fla. Dist. Ct. App. 2013) (same).

It is well settled that the duty to maintain requires a property owner to repair conditions that it anticipates will cause injury. *Middleton v. Don Asher & Assocs., Inc.*, 262 So. 3d 870, 872 (Fla. Dist. Ct. App. Jan. 25, 2019) ("[N]otwithstanding that the condition of the sidewalk was open and obvious, [the defendants still] had a duty to maintain the property in a reasonably safe condition by repairing conditions that they

---

[7] The cases to which the government cites to bolster its open and obvious argument (Doc. 20 at 13) are readily distinguishable.  Those decisions generally concern conditions that are "a matter of common knowledge or every[day] life," such as "uneven pavement, traffic bumps, . . . steps within business premises," and the like. *Moultrie v. Consol. Stores Int'l Corp.*, 764 So. 2d 637, 640 (Fla. Dist. Ct. App. 2000).  These types of conditions cannot fairly be equated to small stones or pebbles lying indiscriminately on a sidewalk.  Notably, none of the opinions referenced by the government involve decorative rocks or other similar objects.

foresee will cause harm.") (citing *Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. Dist. Ct. App. 2012); *Lomack v. Mowrey*, 14 So. 3d 1090, 1092 (Fla. Dist. Ct. App. 2009)).  Whether a condition is one a property owner should expect will cause harm is a question typically reserved for the factfinder.  *Conrad*, 2021 WL 5980703, at *3 (citation omitted) (noting that the "foreseeability issue is usually a factual question for the jury . . . .") (collecting cases); *Cook v. Bay Area Renaissance Festival of Largo, Inc.*, 164 So. 3d 120, 123 (Fla. Dist. Ct. App. 2015) (same) (citations omitted).

In this case, I cannot find based on the record before the Court that the government is entitled to summary judgment on the issue of whether the hospital should have anticipated that small rocks scattered on a walkway would cause harm. Several considerations inform my conclusion.

Perhaps the most obvious consideration is that, construing the evidence in a light most favorable to Abbott-Davis, a rational factfinder could determine that one of the decorative rocks caused her to fall.  In addition, while it is true (as the government maintains) that the two hospital employees—the head groundskeeper, Simpson, and the police officer, Velez—were not aware of any accidents stemming from the decorative rocks (Doc. 20 at 14–15), it is also true that they both had previously seen such rocks on the sidewalk in or around the area where Abbott-Davis tumbled (Docs.

22-2 at 17–18; 22-3 at 26).[8]  Also, one of the photographs of the area submitted as an exhibit depicts a portion of the pathway in or around the area where the accident occurred and shows what appear to be several rocks or pebbles on the walkway.  (Doc. 20-2 at 278).  Moreover, Abbott-Davis and her family all testified in their depositions that they did not observe the decorative rocks on the sidewalk in advance and only saw them after Abbott-Davis fell.  (Doc. 20-2 at 20, 26–27, 140, 212–13).[9]  Finally, a factfinder could reasonably decide that based on the hospital's cleaning schedule, the decorative rocks where Abbott-Davis slipped had been there for at least two days.  Taken together, this evidence raises a genuine issue of material fact as to whether the hospital fulfilled its duty to use reasonable care in maintaining the walkway.[10]  *Collias*,

---

[8] The government's reliance on *Delgado* in this regard is misplaced.  In that case, the court found summary judgment to be warranted only because the plaintiff did not produce "*any* evidence that [the defendant] had actual or constructive notice" of the hazard on the floor."  65 So. 3d at 1090 (emphasis added).  This is not the situation here.

[9] Even if Abbott-Davis knew about the decorative rocks, it would not necessarily support the government's summary judgment motion.  As a number of courts in Florida have held, "'[a] plaintiff's knowledge of a dangerous condition does not negate a defendant's potential liability for negligently permitting the dangerous condition to exist; it simply raises the issue of comparative negligence and precludes summary judgment.'"  *Miller v. Slabaugh*, 909 So. 2d 588, 589 (Fla. Dist Ct. App. 2005) (quoting *Fenster v. Publix Supermarkets, Inc.*, 785 So. 2d 737, 739 (Fla. Dist. Ct. App. 2001)); *see also Lynch v. Brown*, 489 So. 2d 65, 67 (Fla. Dist. Ct. App. 1986) (same).

[10] While neither cited nor briefed by the parties, I note that Fla. Stat. § 768.0755 requires a plaintiff in a premises liability slip-and-fall action to show a business had actual or constructive notice of the condition at issue.  *See* Fla. Stat. § 768.0755; *Leaton v. Flik Int'l Corp.*, 2021 WL 3550370, at *4 (M.D. Fla. Aug. 11, 2021).  The applicability of this statute would not alter my analysis, however, because it "'does not create any new element of a cause of action for negligence.'"  *Leaton*, 2021 WL 3550370, at *4 (quoting *Kenz v. Miami-Dade Cnty.*, 116 So. 3d 461, 464 (Fla. Dist. Ct. App. 2013)).  "Instead, it merely 'codifies a means and method by which a plaintiff shows that the defendant-business establishment has breached its duty of care.'"  *Id.*

313 So. 3d at 167 ("When an injured party alleges that the owner or possessor breached

the duty to keep the premises in a reasonably safe condition, an issue of fact is generally

raised as to whether the condition was dangerous.") (citation omitted); *Aaron v. Palatka*

*Mall, L.L.C.*, 908 So. 2d 574, 578 (Fla. Dist. Ct. App. 2005) (same).

The government's reliance on trip-and-fall cases where courts have absolved

property owners of their duty to maintain is unpersuasive.  *See* (Doc. 20 at 16–17)

(citing *Pope v. Target Corp.*, 226 F. App'x 878, 879 (11th Cir. 2007) (per curiam); *Bryant*

*v. United States*, 2010 WL 11507557 (M.D. Fla. Oct. 26, 2010); *Arnoul v. Busch Ent.*

*Corp.*, 2008 WL 4525106 (M.D. Fla. Oct. 6, 2008); *Potash v. Orange County Lake Cnty.*

*Club, Inc.*, 2005 WL 1073926 (M.D. Fla. Apr. 29, 2005); *Brookie v. Winn-Dixie Stores,*

*Inc.*, 213 So. 3d 1129, 1131 (Fla. Dist. Ct. App. 2017); *Ramsey v. Home Depot U.S.A.,*

*Inc.*, 124 So. 3d 415, 417 (Fla. Dist. Ct. App. 2013); *City of Melbourne v. Dunn*, 841 So.

2d 504, 504 (Fla. Dist. Ct. App. 2003); *Aventura Mall Venture v. Olson*, 561 So. 2d 319,

320–21 (Fla. Dist. Ct. App. 1990); *Circle K Convenience Stores, Inc. v. Ferguson*, 556 So.

2d 1207, 1208 (Fla. Dist. Ct. App. 1990); *Crawford v. Miller*, 542 So. 2d 1050, 1050–51

(Fla. Dist. Ct. App. 1989) (per curiam); *McAllister v. Robbins*, 542 So.2d 470, 470–71

(Fla. Dist. Ct. App. 1989); *K.G. By and Through Grajeda v. Winter Springs Cmty.*

*Evangelical Congregational Church*, 509 So. 2d 384, 385 (Fla. Dist. Ct. App. 1987)).  The

small decorative rocks at issue here cannot credibly be compared to the types of

hazards in question in those actions, like the "large, brightly colored" orange warning

cone in *Bryant*; the visible and "protruding" tree stump in *Potash*; the "blatant" gap in a wooden plank in *Dunn*; or the row of white concrete blocks in *McAllister*.  In addition, in many of those decisions, the plaintiffs either saw the condition and could have circumvented it or there was evidence of others encountering the object and avoiding it.  *See, e.g.*, *Bryant*, 2010 WL 11507557, at *5 (finding that the large, brightly colored orange cone in that case was not unreasonably dangerous, in part, because others had come upon it and had successfully evaded it); *Arnoul*, 2008 WL 4525106, at *3 (concluding that a low-hanging branch was not a dangerous condition where the plaintiff saw it from twelve feet away); *McAllister*, 542 So. 2d at 470 (noting that the plaintiff "knew the line of blocks existed before the accident" and actually "saw the blocks" before he caught his heel trying to step over them).

IV.

In light of the foregoing, I respectfully recommend that the government's *Motion for Summary Judgment* (Doc. 20) be denied.

Respectfully submitted this 25th day of February 2022.

Christopher P. Tuite

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

15

**NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Thomas P. Barber, United States District Judge
Counsel of Record